# ROCKINGHAM,

## JANUARY TERM, A. D. 1858.

### TAPPAN v. TAPPAN.

Where three defendants are sued as joint tenants in a writ of entry, and two of them plead severally sole tenure of the whole demanded premises, the third pleads sole tenure of all but forty acres, and as to the forty acres says nothing; if issue is joined on all the pleas, and found for the defendants, the plaintiff cannot have judgment against the third defendant for the forty acres.

On trial of such an issue, the only question is whether the defendants, when the writ was commenced, were jointly seized of a freehold; and it is no ground to set aside a verdict for the defendants that the court declined to instruct the jury as to the legal effect of the previous pleadings.

Whether the demandant have title or not is immaterial in such case, unless the evidence tends to show a state of facts which would entitle the demandant, for the sake of his remedy, to consider himself as disseized, though not actually ousted of the freehold.

By the established practice in this State, the demandant in a writ of entry counts in all cases on a seizin in himself and a disseizin done to him by the tenant.

If the demandant have title, and a right of entry, his allegation that he was himself seized will be maintained in law, upon the supposition that he has entered and become seized according to his title, though he may never have had actual seizin of the land.

If the demandant have title, and a right of entry, and the defendant plead the general issue, he will be held as a disseizor, though he may not have actually disseized the demandant, upon a like supposition that the demandant has entered and been expelled by the defendant.

Under our statute of limitations, whoever has a right of action has also a right of entry; and when the defendant pleads the general issue to a writ of entry, the only question is one of title.

This local practice is confined in its operation to a simplification of the remedy by writ of entry, and does not affect the substantial rights and liabilities of the parties; and whether defendants in that writ are liable as tenants of the

Tappan *v.* Tappan.

freehold, or as sole or joint tenants, when the question is raised by appropriate pleas, is determined by the rules of the common law.

Where the ancestor of the demandant was disseized, and neither the demandant nor his ancestor entered or demanded possession afterwards, nor did any other similar act to assert his title, while the defendants, who were not the original disseizors, were on the land, they cannot be charged as disseizors and tenants of the freehold at the election of the demandant, and are not liable as such, if they neither have nor claim any freehold interest in the demanded premises.

WRIT OF ENTRY, to recover fifty acres of land in East-Kingston, against Nathaniel Tappan, John L. Tappan, and George S. Tappan. The demandant counted on his own seizin and a joint disseizin by the tenants.

Nathaniel and John L. Tappan each severally pleaded that he was sole seized of the demanded premises, traversed the seizin of the other defendants, and also pleaded over, that he did not disseize the demandant. George S. Tappan, as to ten acres, parcel of the premises, pleaded a like plea, and as to the residue of the premises, said nothing.

The demandant replied that the defendants were tenants of the freehold, as by his writ was supposed, and tendered an issue, which was joined by each of the defendants.

On trial the plaintiff offered in evidence a deed from John Tappan, of East-Kingston, to John Tappan, of Claremont, of the premises, and offered to prove that John Tappan, of Claremont, died, leaving the plaintiff his only child and heir-at-law, which evidence, being objected to by the defendants, was excluded by the court, subject to the plaintiff's exception.

The defendants offered a deed of the premises from Weare Tappan to the defendant, Nathaniel Tappan ; also deeds of the ten acres claimed by George S. from Nathaniel, to John L. Tappan, dated July 13, 1839 ; from John L. to Elbridge G. Tappan, dated December 7, 1842, and from Elbridge G. to George S. Tappan, dated April 8, 1850. The writ was dated in 1851. Nathaniel Tappan was the father of the other defendants.

The plaintiff introduced evidence tending to show that at and prior to the date of his writ, the defendants were jointly occupy-

ing and cultivating the land, harvesting the crops together, consuming and using the produce and stock raised and kept on the premises, as their joint property.

The defendant's evidence tended to show that Nathaniel Tappan entered upon the premises under his deed from Weare Tappan, in 1822, and that he had always held, occupied and possessed the whole alone, as sole tenant, according to his deed ; that in 1838 the plaintiff himself knew and admitted that Nathaniel Tappan was sole tenant of the whole premises, and that there was then no joint tenancy between him and any other person ; that he kept possession of and occupied the whole till his deed of ten acres, to John L. Tappan, in 1839, and after that occupied and possessed the remaining forty acres in the same way, according to his deed, down to the date of the writ ; that John, Elbridge and George severally occupied the ten acres each, as sole tenant under his deed ; that Nathaniel had received the sole benefit of the crops and increase from 1822 to 1839, and of the forty acres ever after up to the date of the writ ; that Nathaniel owned and occupied two other tracts of land, near the premises, and lived on one of these tracts ; that John and George sometimes worked with and for their father on his land, in the busy seasons of the year, in the same manner as his other sons did when at home, and as other hired laborers, under direction and control of their father, working occasionally on the demanded premises, as they did on his other lands ; that John and George never claimed any interest, right or title to any part of the demanded premises except the ten acres, or exercised or attempted to exercise any control or supervision over them, and were in no way interested in the crops or increase.

There was no evidence that the plaintiff before the commencement of this suit had ever entered or attempted to enter on the demanded premises since the entry of Nathaniel Tappan, in 1822.

The plaintiff offered evidence tending to show that the defendants were occupying the premises as joint tenants soon after the commencement of the suit ; and, objection being made, the evidence was excluded, subject to the plaintiff's exception.

The defendants introduced a witness who testified that while John L. Tappan held the deed of the ten acres, John L. employed him to work on the ten acres, and paid him for his labor in harvesting crops of rye, corn, hay, and potatoes ; that in the summer of 1842 John L. took the witness on the land, to show him his corn, and when on the ground pointed out to the witness the boundaries of his ten acres, and said that he owned that piece, that he did not then nor any other time make any claim to any part of the premises, except the ten acres.

To this testimony the plaintiff objected, but it was admitted, subject to exception ; and the court instructed the jury that it was to be considered only so far as it tended to show the character and extent of John L. Tappan's occupation at that time.

Defendant's counsel was allowed to ask a witness whether he ever heard George make any claim to any part of the premises except the ten acres, subject to the plaintiff's exception. Lucinda A. Tappan, a witness for the defendant, was allowed to testify that John L. never had or claimed to have any interest in the crops upon the premises, except the ten acres, subject to the plaintiff's exception.

The plaintiff moved that judgment be rendered against George S. Tappan, as *nil dicit* for all the premises except the ten acres, and the motion was denied.

The plaintiff requested the court to instruct the jury as follows :

1. That the only question for their consideration is, did the defendants, at the time when the action was brought, occupy the premises jointly or severally.

2. That the several pleas admit that the defendants were in possession of the whole or parts of the demanded premises, claiming a freehold estate ; and if the jury find that the defendants were, at the time of the commencement of the action, in possession of the demanded premises, managing the same together, and not in severalty, it is their duty to find the issue for the plaintiff.

3. That the only effect of the deeds put into the case by the

defendants is to create a presumption that their occupation was according to the deeds; but if their occupation was not according to their deeds, and the defendants were in occupation of the demanded premises, cultivating the same together, the presumption is controlled, and the plaintiff is entitled to a verdict.

4. That if the defendants, at the time when the action was commenced, were in possession of the premises, the plaintiff in the pleadings is entitled to a verdict, regardless of any agreement or arrangement of the defendants as to the cultivation of the premises.

5. That the defendants admit by their pleas that they were in possession of the demanded premises, and are not entitled to a verdict, unless it appears that their occupation was in severalty in fact; and if at any time next preceding the writ the defendants did any act of occupation or ownership together, the plaintiff is entitled to a verdict.

6. That the plea of Nathaniel Tappan admits himself to be in possession of the premises, claiming a freehold, and the plea of John is to the same effect; that the plea of George admits himself to be in possession of ten acres of the premises, claiming a freehold, and his omission to make any answer to the residue of the demanded premises is in law an admission that he was in possession of the residue; that therefore all the defendants were in possession of the premises, and were joint tenants, unless their occupation was adverse to each other.

The court declined so to instruct the jury, and instructed them as follows:

1. That the only question raised by the pleadings, and the only issue for them to try, was, whether or not the defendants, at the commencement of the suit, were joint tenants of the premises described in the plaintiff's writ, but claiming the freehold.

2. That it was immaterial to the issue which of the parties had the better title to the premises, as the question of title was not in issue.

3. That the evidence of title introduced by the defendants

was to be considered only as it might tend, in connection with the other evidence, to explain the character and extent of their possession.

4. That a party, entering upon land under color of title, is presumed to enter and occupy according to his title ; but that this presumption might be rebutted and controlled by other evidence, and that if the defendants were in possession under color of title to them jointly, that would be evidence upon which the jury might find the issue for the plaintiff; that, on the other hand, if they were in possession under color of title to them in severalty, unless it was controlled by other evidence, this would be evidence on which they might find the issue for the defendants.

5. That tenancies of the freehold may exist either by right or by wrong ; that it was immaterial to this issue whether the defendants were joint tenants as of freehold of the demanded premises in one of these ways or the other, but if in either way their verdict should be for the plaintffs,—otherwise, for the defendants.

6. That if the jury should find that at the date of the writ the defendants were jointly in possession of the demanded premises, claiming a joint interest, whether they claimed by virtue of a joint disseizin or by any conveyance to them jointly, either for life or in fee, their verdict should be for the plaintiff; otherwise for the defendants.

The jury returned a verdict for the defendants. The plaintiff, having excepted to the foregoing rulings and instructions of the court, moves that the verdict be set aside, and also on the ground that the court declined to rule as requested by the plaintiff, and omitted to give the jury any instructions as to the effect of the defendants' pleas, or the effect of the plea of George S. Tappan, or of his omission to answer to the residue of the premises, except the ten acres.

*J. S. Wells*, for the plaintiff.

The court erred in declining to instruct the jury as to the effect of the defendants' pleas. The pleas show that the defendants were in the possession of the entire estate. Nathaniel and

John L. claim the entire estate. George S. ten acres, as sole tenant, but by his plea admits himself in possession of the balance. The plaintiff proves that the defendants were jointly occupying and cultivating the land, harvesting the crops together, consuming and using the produce and stock raised and kept upon the premises, as their joint property.

In the decision of this case, 11 Foster 41, it was decided that under these pleas, if the defendants were in the occupation of the whole estate, their particular arrangements among themselves were immaterial : That if the plaintiff shew himself to be the owner of the property, (and this he offered to prove by legal evidence,) and that the defendants were in the joint possession, claiming the property, he was entitled to a verdict.

Now it is clear, under these pleadings, that these defendants were, as to the plaintiff, joint tenants of the premises, for, by the pleas, they clearly had the joint occupation.

The evidence from the family, of the defendants' attempting to qualify the possession or occupation of John L. or George S., was improper, and inconsistent with their pleas, and the court should have instructed the jury upon that subject.

The theory of presumptive occupation, according to the deeds of several parts of a given estate, does not apply in this case. Here are three men, constituting one family, and all in the occupation of the estate claimed, and the plaintiff did right in bringing a joint action to expel them. To defeat this action, Nathaniel claims the whole estate. John L. claims the whole estate, and George S. claims ten acres sole, *nil dicit* as to balance, which is a concession of a possession of the balance to the same extent as though he had simply filed the general issue. Now the idea of a several possession by these three men, each in possession of the whole, and each claiming the whole, is absurd.

If they had carved the estate into three parcels, each claiming a parcel, then the presumption, according to their deeds, would have attached, and that presumption the plaintiff must have rebutted. And we submit that in that case the presumption would have been effectually rebutted by proving that their

actual possession was not severed according to their claims, but that they had a joint occupation of the entire estate.

The pleadings in this case establish, independent of the plaintiff's evidence of their joint occupation, cultivation, harvesting and consuming the crops together ; that their possession was not several, but jointly of the whole, and constitutes them, as to this plaintiff, joint tenants of the estate sued for.

The plaintiff shows them to be all wrong doers as to him, because they are all in possession of the land to which he has a title, and they cannot qualify or limit the wrong by any evidence respecting the color of title under which they entered, or may be presumed to have entered.

Suppose the defendants had introduced color of title of an estate for years, raising a presumption that they entered as tenants for years, and thus negativing a joint tenancy of the freehold through the effect of the presumption, if not rebutted. The proof of the plaintiff's title, and that the entry as to him was wrongful, would rebut or negative the presumption ; because, having entered wrongfully, they could not qualify the wrong by saying that they entered, under this color of title, into a less estate than that of the plaintiff whose right they usurped. In this case the defendants, instead of color for years, offer color in severalty, and claim that this is evidence tending to show an occupation in severalty ; that the presumption is that the occupation is according to the title. The plaintiff may rebut this by anything which shows that it was not in severalty, strictly in severalty. If he shows a single instance of an occupation together, he rebuts the presumption by proof of the fact. The occupation can no longer be presumed to be several, and the color of title is no longer of any avail. The defendants, by any single act of occupation, are all wrong-doers, and cannot limit or qualify that wrong by showing color of title in severalty, nor even by showing that they generally occupied in severalty. It is not a question how they generally occupied, or how they are presumed to have entered. The plaintiff was entitled to have the jury directed to inquire whether the defendants at any time next

preceding the writ, did any act of ownership or occupation together upon the estate claimed. If the jury found they did, it was immaterial how they entered, or how, as among themselves, they possessed at other times. Jointly harvesting the crops is a joint occupation. Jointly occupying and cultivating the land together is a joint occupation. Jointly consuming and using the produce and stock raised and kept on the premises, is a joint occupation ; and this occupation is of the freehold, because wrongful, and one which the defendants cannot therefore qualify.

Wrongful, because on these pleadings the plaintiff's title, not being traversed, is to be taken as admitted, without proof even. The question was merely whether he brought his writ rightly against these defendants jointly. Certainly he has, if they have jointly done any one act to show themselves tenants of the freehold about the time the suit was commenced. And this they have done, if they did any act like those above mentioned, or which in either of them would amount to a disseizin. It can make no difference if they have done forty other acts showing a claim of title in severalty, and a several occupation at other times.

It was the right of the plaintiff to prove himself the owner of these premises on the authority of the former decision of this case.

The plaintiff had a right to show how the defendants occupied soon after the date and service of his writ. In fraudulent conveyances, proof of other like acts have been often allowed in our courts as tending to show, to characterize the act in question. Here, proof of undoubted acts of occupation as joint tenants soon after the date of the writ, were competent, as tending to show the character of their occupation.

The declaration of John L. to the witness who dug the potatoes, was incompetent, as his declaration could not qualify and control the effect of a joint occupation by all the defendants as joint tenants. And so of the declarations of George S. and John L., as testified by Lucinda A. Tappan. Though these witnesses never heard the parties make any claim to any part of

the premises except the ten acres, it did not follow that they had not made such claim, and tended to mislead the jury and contradict the defendants' pleadings.

*Marston & Christie*, for the defendants.

1. Evidence of title in the plaintiff was properly excluded. In the former case it was decided that no question of title was involved in this issue.

2. So evidence of the character of the defendants' tenancy *after* the commencement of the action, was properly excluded. The pleadings relate to the time of the commencement of the suit.

3. The declarations of John L. Tappan as to the ten acres were admissible. He was in possession. The declarations accompanied and explained acts which were material in evidence. They went to *limit* his claim, and so were against interest. 1 Greenl. Ev., sec. 109.

4. The testimony of Lucinda A. Tappan and the other witness, as to the extent of George S. Tappan's claim, was admissible. In the former case it was decided that the plaintiff must prove " that the tenants were in the joint possession *claiming the property.*" The plaintiff accordingly introduced evidence that the defendants jointly occupied and cultivated the land, harvested the crops together, &c. From this evidence the plaintiff argued that the defendants *claimed* the property jointly. It was surely competent for the defendants to disprove this material allegation. The plaintiff cannot complain that they did not bring all the world to prove the negative.

A claim of an interest in the whole premises is a verbal act, material on these pleadings; and its existence or non-existence is to be proved by the same sort of evidence as any other fact.

5. The court rightly refused to render judgment against George for the residue of the land, as to which he says nothing. No judgment can be rendered against one of the defendants alone, on these pleadings.

6. The instructions given to the jury are precisely the same

as those given on the first trial, except the one which the court held to be erroneous. That one is believed now to be strictly in accordance with the opinion of the court.

7. It is difficult to understand how a party by pleading *sole tenancy* admits that he is *joint tenant* with others. See Jackson R. A. 78, 87.

PERLEY, C. J. The demandant, to maintain his suit against the defendants, must show that they jointly disseized him, and that at the time when the action was brought they were jointly seized by disseizin of a freehold in the demanded premises. Where several defendants are jointly sued in a writ of entry, and severally plead sole tenure of the whole land, or each pleads sole tenure of parcel, and disclaims or says nothing as to the residue, each plea falsifies the writ, and if the plaintiff would proceed against all the defendants, he must affirm his writ, and reply that they were jointly seized of a freehold. Jackson on Real Actions 74. But if one defendant pleads sole tenure of the whole, and the others disclaim, or say nothing, the plaintiff may proceed for the whole against the defendant, who assumes the defence of the whole. 1 Saund. 207, note; Booth on Real Actions 33; Jackson on Real Actions 74; Stearns on Real Actions 204; Rastell's Entries 276, b. And for this reason, when one of several defendants, sued jointly in a writ of entry, pleads sole tenancy, he must answer over to the action, and offer to defend the land of which he admits himself to be seized, as was done in these pleas.

In this case the plaintiff replied to all the pleas, that the defendants were seized, as by his writ was supposed, and each of the defendants severally joined issue on this replication. To maintain the issue on his part, the plaintiff would be required to show on trial that in contemplation of law the defendants at the commencement of the suit were jointly seized by right or by way of a freehold in the demanded premises.

While the cause was on trial the plaintiff moved for judgment on *nil dicit* against George S. Tappan, for all the land except

the ten acres, to which his plea applied. The issue on trial was whether the defendants were jointly seized of a freehold. This issue was joined by each of the defendants, and the right of the plaintiff to judgment on the record had nothing to do with the trial of that issue. This application was in the nature of a motion for judgment, notwithstanding the verdict. The plaintiff contends, that however the verdict may be, George S. Tappan, by saying. nothing to the plaintiff's demand as to forty acres of the demanded premises, admits it for so much, and that therefore the plaintiff is entitled at all events to judgment against him for the forty acres.

It is true that by *nil dicit* the defendant admits the plaintiff's claim, for in pleadings at law whatever is not denied is taken to be admitted. What, then, does the plaintiff allege and claim in this case ? He alleges that the defendants jointly disseized him of the premises, and are jointly seized by disseizin ; and he claims a joint judgment against the three defendants ; and the legal effect of the pleadings is, that George S. Tappan admits that, jointly with the other defendants, he disseized the demandant of the forty acres, and is jointly seized with them, and consents that a joint judgment shall be rendered against him and the other defendants for the forty acres.

But the plaintiff does not allege that George.S. Tappan alone disseized him, or was sole seized of the forty acres, nor demand judgment against him alone for the forty acres, or any undivided share in them. Nor does George S. Tappan by *nil dicit* admit that he is chargeable alone for the forty acres, or for any part or undivided share of them. This is essentially different from the case of a joint judgment in a personal action, where each of the defendants is liable *in solido* for the whole judgment. In a writ of entry the judgment is for the restoration of the demanded premises, and the tenant can restore such part only of the land, and such share and estate in the land, as he has in his seizin and possession. *George* v. *Sargent*, 12 N. H. 313 ; *Beckley* v. *Newcomb*, 4 Foster 359. It is said, in Booth on Real Actions 34, " If a præcipe be brought against four, and one disclaims,

two take the entire tenancy upon them, and the fourth make default after return of the grand cape, yet the demandant shall not recover seizin of the fourth part till the issue of the sole tenancy be tried between him and the other tenants." In the present case, if the issue of the sole tenancy had been found against the defendants, the plaintiff would have been entitled to judgment against them all, including George S. Tappan on his *nil dicit,* for the forty acres ; but, until that issue was so found, the plaintiff could not have judgment against George S. Tappan, even for an undivided third of the forty acres.

The plaintiff contended that as the different pleas of the defendants admitted that they were respectively in possession of the whole land, claiming the freehold, their possession and seizin was joint, unless their occupation was adverse to each other ; and asked the court so to instruct the jury. But the defendants pleaded severally, and no one of them is bound by any admission or claim that the others may have made in pleading. Nathaniel Tappan, for instance, pleads that he was sole seized. If he shows that fact, he maintains his plea, though John L. Tappan, who pleads a like plea, was on the land under Nathaniel, admitting his title, or, though he was not in or on the land at all ; and no admission or claim of John L. Tappan made in pleading can conclude or in any way affect the rights of Nathaniel Tappan, tried on his several plea ; and if Nathaniel Tappan maintains his plea, the plaintiff fails to establish a joint seizin in the defendants, whatever may be the occupation or claim of the other defendants. It was not therefore true, as matter of law, that on these pleadings, if one of the defendants prevailed his seizin must be adverse to both or either of the other defendants ; because each defendant had the right to an independent trial on his own several plea, and if he maintained it, was entitled to a verdict, though the others might fail in theirs ; and the plaintiff, by a general replication, affirming his writ and tendering an issue on the joint seizin of the defendants, could not deprive them of this right.

The pleadings ended in an issue of fact which was on trial by the jury, and they could have derived no aid from any attempt

to analyze the previous pleadings, and understand their legal effect. Whether, in case the defence were made out, the possession of the sole tenant would be adverse to the other defendants, was not at all material to the matter of fact on trial. The instructions asked for could not have assisted the jury, and might have embarrassed them with a useless attempt to understand the legal effect of the pleadings. They would have had a tendency to defeat the main object of pleading, which is to extract from the allegations of the parties a simple and single question of law for the court, or of fact for the jury.

The court rejected evidence of the plaintiff's title, on the ground that the only question being whether the defendants were jointly seized of a freehold, either by right or by wrong title, was not in issue ; but the defendants might have a joint possession of the land, which the true owner at his election would be at liberty to treat for the sake of his remedy as a seizin of the freehold, though the same possession, if rightful, would not amount to such a seizin. And in this case the question was, whether the defendants at the commencement of the suit had such a joint seizin as would make them liable as tenants of the freehold to the demandant's writ. If the evidence tended to show a state of facts which would give the true owner, for the sake of his remedy, the right of electing to consider himself as disseized, though not actually ousted of the freehold by the defendants, the question of title would be material, and the ruling of the court incorrect ; for it is only the true owner that has this right of election. The case must be considered as if the plaintiff had title to the land, because he offered evidence to that point, which was rejected.

Taking the title, then, to have been with the plaintiff, it appears that the party under whom he claims was originally disseized and actually turned out of possession by Nathaniel Tappan, when he entered under his deed from Weare Tappan, in 1822. There was no evidence tending to show that the original disseizin was the joint act of these defendants. None of the points made by the plaintiff go on the ground that he, or any one under whom he claims, was originally dispossessed of the premi-

ses by the joint entry of the defendants.  Nor was there any evidence that the plaintiff, or any one who formerly held his title, entered after the original disseizin upon the joint possession of the defendants, or when the defendants were together on the land, and was again turned out; or demanded possession of the defendants when they were on the land, and was refused.  The plaintiff does not rely, and there is nothing in the case to warrant him in relying on a joint original disseizin by the defendants, nor on a subsequent entry and fresh ouster by them, nor on a demand of possession made of them while they were on the land together. His case goes upon the ground that Nathaniel Tappan originally disseized him or his ancestor, and that the other defendants have since become seized with Nathaniel Tappan of a freehold in the demanded premises by some arrangement with him and among themselves; that the plaintiff and his ancestor have remained actually disseized and dispossessed since the original disseizin, without asserting their title by an actual entry or demand, or other similar act.   We are here met with the question whether the doctrine of an elective disseizin, as distinguished from an actual ouster of the freehold, is applicable to such a state of facts. If it be so, evidence of the plaintiff's title should have been received.   The question suggests inquiries of considerable extent.

It would seem that originally, and in the feudal sense of the term, nothing was regarded for any purpose as a disseizin except an actual expulsion of the lawful tenant from the land, and a substitution of the disseizor as tenant, rendering suit and service to the lord, and this implied an acceptance by the lord of the disseizor as his tenant.   The true idea of such a disseizin has been supposed to be now lost.   It was said by Lord *Mansfield*, in the celebrated case of *Taylor* v. *Horde*, 1 Burr. 108, that the changes in the law had then left little but the names of feoffment, tenure, seizin, and freehold, without any precise knowledge of the thing signified by those sounds; and *Kent*, C. J., in *Burtis* v. *Smith*, 6 Johns. 215, remarks that all the books seem to agree that the learing on this subject has become abstruse. But Mr. Justice *Story*, in *Prescott* v. *Norris*, 4 Mason 329, says

that notwithstanding what was said by Lord Mansfield in *Taylor* v. *Horde*, what constitutes a disseizin is, at least in this country, well settled, and that he remembered to have heard Chief Justice *Parsons* say that Mansfield had not gone to the bottom of the matter, and had puzzled himself unnecessarily.

It is to be observed, however, that in *Taylor* v. *Horde* and *Smith* v. *Burtis* the question was on the character of such a disseizin, as, according to the old rule of law, would toll the entry of the owner on a descent cast, and not on the effect of a conveyance made by the owner while he was disseized, or on the nature of an adverse possession, such as would bar his claim under the statute of limitations. As I understand the law of this State, until his right is barred by the statute, no disseizin tolls the entry of the true owner, or prevents the operation of his conveyance. What constitutes an actual ouster of the freehold, in spite of the owner, and an adverse possession, under the statute of limitations, may. indeed be often a complicated question of law and fact, but the legal idea of such a disseizin is, I suppose, well understood in this State, and an attempt to ascertain what was the original nature of feudal disseizin would be matter of historical curiosity, rather than of practical importance. Our difficulty is not in determining what constitutes an actual ouster and forcible disseizin against the will of the owner, but in ascertaining what are the limits of the right which the owner has of electing to consider himself as disseized by the defendant, for the sake of his remedy by writ of entry, when the defendant has not actually ousted him of the freehold, and claims no such estate in the land.

The notion of an elective disseizin, for the purpose of a remedy when the owner was not in fact turned out of the freehold, is said to have been first devised in order to extend the remedy by the assize of novel disseizin, and in that process was extended between the true owner and the wrong-doer to almost every case of obstruction to the owner's full enjoyment of lands, tenements and hereditaments. *Taylor* v. *Horde*, 1 Burr. 110. The assize of novel disseizin is supposed to have been invented by *Glanville*,

in the reign of Henry 3, as a more convenient remedy for the recovery of lands, when the owner had been recently disseized. If the complainant in that process recovered the land, he also in the same suit recovered damages for any injury done to it by the defendant. In process of time it became the practice, when any injury whatever had been done to land which trenched on the owner's free enjoyment, to bring an assize, alleging, of course, that the owner was disseized, and claiming damages for the injuries, whatever they might be, which the defendant had done to the land. If, when the defendant came in and answered, he admitted himself to be seized, and defended his right, the assize proceeded according to its original form and design, for the recovery of the freehold. But if, when the defendant came and answered, it appeared to the judge, that is, I take it, if it appeared by the defendant's plea, that what the defendant had done on the land was not done with a claim of right, " he was cleared of the imputation of a disseizin, and was considered rather as a trespasser." If it appeared, therefore, when the defendant came in that he made no claim to the land, he was not compelled to assume the defence of it, and was not held chargeable for the restoration of the freehold; and the assize, according to its original design, having no jurisdiction of the trespasses except as incidental to a disseizin of the freehold, the cause could proceed no further.

It was usual, however, after the defendant had disclaimed title to the land, for the parties to agree that " the assize should be changed into jury," and the trespasses be tried in that proceeding. And at length it became the established practice to use this process of an assize, when it was well understood that the real injury complained of was a mere trespass, and this practice prevailed to such an extent that the action of trespass went almost entirely out of use. 1 Reeve's History of the Law 338, 339; 2 do. 342, 343.

So far as respects any judgment for the recovery of a freehold in the land, the disseizor by election used in the assize of novel disseizin, was a mere fictitious suggestion, inserted in the process to

give the assize jurisdiction of a trespass, by one of those astute contrivances which have not been uncommon in the history of English law. Where there was no actual ouster of the freehold, and no claim of right by the defendant, the cause was tried as a mere trespass, and the judgment which the plaintiff recovered was a sum of money for the injury done to his land, and not a judgment for the restoration of the freehold.

But though the defendant made no claim to the land, and though no issue was joined upon the point of his seizin or disseizin, and no judgment was sought for the recovery of a freehold, the question whether the defendant was seized of the freehold, and responsible as a disseizor, might arise in the assize of novel disseizin, as matter of fact on the trial for damages. When the defendant pleaded non tenure, it would seem that in practice there was no replication to that plea; but with his plea of nontenure the defendant was obliged to plead farther, that he ·had done no injury nor disseizin, and put himself on the assize. Booth on Real Actions, Title, Assize, 218. On trial it might be material to inquire whether the defendant was liable as a mere trespasser, or as a disseizor and tenant of the freehold, as in this last case he would be chargeable generally for the costs and profits of the land; and it was in reference to this question, arising thus on the trial of the trespasses, that the disseizin by election, which was afterwards adopted in the writ of entry, was allowed in the assize of novel disseizin. The plaintiff was permitted, for the sake of recovering his damages in that proceeding, to consider himself as disseized in certain cases, where he was not actually ousted by force, and the defendant claimed no freehold interest in the land.

When reference is made to disseizin by election, as it was used in the assize of novel disseizin, it is material to bear in mind this distinction between the fictitious suggestion of a disseizin, inserted in the process to give the assize jurisdiction over a mere trespass, and that election which the plaintiff was allowed to make when the question arose whether the defendant should be charged in damages as a disseizor or as a mere trespasser. And

it is apprehended that, from want of attention to this distinction, general statements have been sometimes rather loosely made in speaking of the elective disseizin, adopted in the writ of entry, from the practice in the assize of novel disseizin. The assize of novel disseizin, by virtue of the fictitious suggestion in the process, was used to recover damages for a mere trespass, and almost any other injury to land. But no election was allowed in that action by which a mere trespasser could be charged as a disseizor and tenant of the freehold, and no such election has been adopted in the writ of entry from that proceeding.

The assize of novel disseizin at length went nearly if not altogether out of use, as a remedy for the recovery of a freehold in land, and was succeeded in practice by the writ of entry, which was in its turn supplanted by the fictitious action of ejectment, so completely that hardly an English case can be found, decided within the last two hundred years, in which any question has arisen as to the nature of the seizin in a defendant necessary to charge him as tenant in a writ of entry; and as in the action of ejectment no freehold is recovered, there is little to be found in the later English cases on the doctrine of disseizin by election; and the same cause, to wit, that the writ of entry is not in use, has prevented the question from being much considered in most of the United States. There are some cases in this and the neighboring States, but for the authorities on this point we must resort chiefly to the old books.

An enumeration of the cases in which the owner has been allowed to consider himself as disseized by the defendant, though not actually turned out of the freehold, may be found in Viner's Ab., Disseizin, (H. & J.); Com. Dig., Seizin, (1, 2 and 3); Booth on Real Actions 285, 286, and in the learned opinion of C. J. *Richardson, Towle* v. *Ayer,* 8 N. H. 57; Littleton, secs. 429, 430; Co. Lit., 256, b; *Walker* v. *Wilson,* 4 N. H. 217, and *Wilson* v. *Webster,* 6 N. H. 419, are also authorities which bear on this question.

It will appear from an examination of the authorities that, —

Wherever one entered wrongfully on the possession of the

owner, and ·turned him out, though the wrong-doer made no claim to any interest in the land, either in his own right or that of another, he might be charged as a disseizor, at the election of the owner.

Where one made a tortious entry, claiming in right of another, as guardian, bailiff, agent, or a mere servant or laborer, he was chargeable personally as a disseizor.

Where one was rightfully in the land under the true owner, acknowledging his right, and renounced the owner's title by making a feoffment, or an unauthorized lease, or by paying rent, or accounting to another, the owner might elect to consider himself as disseized. In such case, possession being held under the owner, the legal seizin would be in him, and the wrongful act of the party holding the land under him was allowed to be treated as equivalent to an actual ouster of the freehold.

Where one comes upon or to the land, and lays claim to it, though he actually does not turn the owner out, he may be treated as a disseizor.

Where, after a disseizin, and while the owner remains disseized, one has come on the land, as tenant for years or at will, or even as a mere servant or laborer, and the owner enters, claiming the land, if the party thus on the land remain there after such entry, made with his knowledge, and thus resist the owner's claim to possession, he may be charged as a disseizor and tenant of the freehold.

Where the owner, being at the land, demands possession, and the possession is withheld by any one in or on the land, this is regarded as equivalent in law to an entry and fresh ouster, and the party who thus withholds possession may be charged as a disseizor, though he claims less than a freehold, or claims nothing in the land.

Where one wrongfully enters on the actual seizin and possession of the owner, and turns him out of the land, the wrong-doer cannot qualify his wrong, and excuse himself from answering as tenant in a writ of entry, by alleging that he did not claim a freehold, and did not intend to take the freehold from the owner.

Tappan *v*. Tappan.

And in the other case, where the owner is not actually turned by force out of the land, it would seem that the facts are such as, in contemplation of law, amount to the same thing. If the owner demands possession, and is refused, the case is regarded in law as if he had entered, become re-seized, and been ousted afresh by the party on the land; and when the owner enters and possession is retained by one on the land, retaining the possession is considered as an ouster of the seizin, which the owner regained by his entry. So, when a tenant for years or at will renounces the title of the owner by a feoffment in payment of rent to another, the legal seizin is in the owner, while the land is held under him by his tenant, and he is allowed to consider the wrongful act of the tenant as ousting him of the seizin, and transferring it to another. It would seem that in cases where this election has been allowed, either the owner has remained seized until the wrongful act of the tenant, which is allowed to be regarded as a disseizin; or, having been disseized, has, in contemplation of law, regained the legal seizin by an entry or demand, or some other similar act, asserting his right to the possession of the land.

But where the owner has been disseized and turned out of the freehold, and remains disseized, and one goes on the land as tenant for years, or at will, or as a mere servant or laborer, and claims no freehold interest in the land, I have not seen any case or authority, old or new, going to show that the party thus on the land can be charged as a disseizor and tenant of the freehold, without an entry or demand, or some other similar act of the owner, notifying and asserting his title. If the party on the land resists the attempt of the owner to regain possession, the law holds him responsible for the restoration of the land, and for the rents and profits in a writ of entry, and will not allow him to say that he does not claim a freehold. But I do not understand that one who goes on land, while the owner allows himself to remain disseized, and who neither has nor claims a freehold, can be charged as a disseizor and tenant of the freehold, and subjected to all the serious consequences of a judgment in a writ of entry, until he has had notice of the owner's claim, and an opportunity

of yielding to it when asserted by demand, entry, or some other equivalent act.  If there is doubt as to the character of the possession which any one may have who came in after the owner was disseized, there is certainly no hardship in requiring him to demand possession before he brings a suit which calls for a restoration of the freehold, and charges the defendant with the rents and profits.  If that course is pursued the party on the land has opportunity to surrender the possession, if he makes no claim; and if he refuses, the owner is relieved from all embarrassment; for in that case the law is clear that whoever is on the land must answer as tenant of the freehold, whether he claims one or not.

In the present case there was no evidence to show an actual ouster of the plaintiff or his ancestor by the joint act of the defendants.   Taking John Tappan to have been the true owner, he was actually disseized and turned out of the freehold by the entry of Nathaniel Tappan, under the deed of Weare Tappan, in 1822 ; as, so far as the case shows, the plaintiff and his ancestor have remained actually disseized ever since, without any entry or demand on the defendants when they were in joint possession or on the land together, or any other equivalent act by which the plaintiff or his ancestor has asserted title to land after the original ouster.   Nothing has been done that in contemplation of law could revest the seizin in the owner, and at his election charge the defendants as joint disseizors, because they were on the land together, and did not yield the possession ; and this, upon the doctrine of the authorities referred to, is not a case where the owner at his election would be at liberty to consider the defendants as joint disseizors, and jointly seized of a freehold by disseizin, unless they were jointly possessed of the land, claiming a freehold.   Seizin is defined to be "the possession of land under claim, either express or implied, of an estate amounting at least to a freehold."  *Towle* v. *Ayer*, 8 N. H. 59 ; and this is not a case in which, according to any authority that I have found, the law would imply a claim of the freehold on account of the wrongful act of the defendants, though no such claim was actually made by them.

The demandant counts on his own seizin and a disseizin done to him by the defendants. His writ is, therefore, in the nature of a writ of entry. *Sur disseizin in the quibus.* At common law, if the defendant pleaded the general issue to such a writ, he admitted himself to be tenant of the freehold ; but he did not by that plea admit that the demandant was ever himself seized according to his title ; nor that the defendant was in the land by an entry which he had himself made on the seizin of the demandant, or on the seizin of the party from whom the demandant's title was derived. The consequence of this rule was, that if the demandant had never been himself seized, or if the defendant was in as an abator, or intruder, or had come in by or after the original disseizor, the demandant would be defeated on trial of the general issue, though he proved his title to the land and his right to recover the possession of the defendant. And thus, at common law, the plaintiff in a writ of entry, when the disseizin was not done to himself, but to his ancestor or other party from whom he derived his right, was obliged to set out in pleading how he derived his title from the party who was actually disseized ; and if the defendant was not himself the disseizor, the plaintiff was also required to state how the defendant came into the land. This led to numerous distinctions and refinements, by which the remedy by writ of entry was much embarrassed.

But in this State, by a long established practice, extremely familiar to the legal profession, the demandant in a writ of entry is in all cases allowed to count on his own seizin and a disseizin done to him by the tenant. He is not required to set out a derivative title in himself, nor to show how the tenant came into the land. If he have title and a right of entry, he is supposed to have entered and to have become seized according to his title, and to have been ousted by the defendant ; and, as under our statute of limitations, whoever has a right of action has also a right of entry, when the tenant pleads the general issue, the only question on trial is one of title.

I understand that this practice is limited in effect to a simplification of the remedy by writ of entry, and does not affect the

substantial rights and liabilities of the parties; and that the question whether the defendant in a writ of entry is answerable as tenant of the freehold, when that question is raised by an appropriate plea, is governed in this State by the rules of the common law, as I have stated them, and such is the opinion of the court; but on this point we are not unanimous.

In the instructions to the jury upon the question as to what possession and claim would make the defendants liable as joint tenants of the freehold, the court appear to have adopted the rule laid down in the case formerly sent to the Superior Court in this action, and reported 11 Foster 41; and we see no reason to question their correctness.

Some minor points remain to be considered. The law in many cases presumes that a state of things, once proved, continues until the contrary is shown; but not that it existed prior to the time to which the evidence relates. A case may be supposed where subsequent acts might tend to show the character of previous transactions. If, in the present case, the evidence had shown that the defendants had sowed the land together, before the suit was brought, perhaps the fact that they jointly harvested the crop, and divided it among them afterwards, would have a legal tendency to prove that they were jointly interested in the crop from the beginning, and had a joint occupation of the land before the suit was brought. But here the offer was to prove a joint occupation of the land, without showing any such peculiar connection with the previous occupation as would tend to give it a character; and we think the evidence was properly rejected.

The evidence of the demandant went to show John L. Tappan on the land in dispute. His declaration made at the time was competent to show whether he was on the land, claiming an interest in it. Was he there occupying for himself, or did he admit the title of another, and disclaim for himself? His declaration was competent to show the character of his occupation. 1 Greenl. Ev., sec. 109.

The situation of a witness, and his connection with the party and the property, might be such that the fact of his making no claim would be competent evidence that he had none. The case does not show how one of the witnesses, who was admitted to testify that he never heard Geo. L. make any claim to any of the land except his ten acres, was situated. But at the most, the evidence was immaterial, and we are not able to see how it could prejudice the plaintiff.

The conclusion is, that there must be

*Judgment on the verdict.*